UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CHOICE SCOTT,                                    :
                                                 :
                    Plaintiff,                   :
                                                 :
        -against-                                :
                                                 :        07CV11303(NRB)(THK)
BRIAN FISCHER; GLENN GOORD;                      :
RICHARD de SIMONE; AUDREY                        :
THOMPSON; and JOHN DOES, Nos. 1-10               :
(members of the New York State Department        :
Of Correctional Services whose names are         :
Presently unknown to plaintiff),                 :
                                                 :
                    Defendants.                  :
-------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS


ROBERT T. PERRY
350 Broadway, Suite 1207
New York, New York 10013
(212) 219-9410

*Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.     THE COURT SHOULD NOT ABSTAIN FROM DECIDING THIS CASE . . . . 5

          A.    *Younger* Abstention Does Not Apply Here . . . . . . . . . . . . . . . . . . . . . . . . 5

          B.    *Pullman* Abstention Does Not Apply Here . . . . . . . . . . . . . . . . . . . . . . . . 7

          C.    *Colorado River* Abstention Does Not Apply Here . . . . . . . . . . . . . . . . . . .8

    II.    *HECK v. HUMPRHEY* DOES NOT BAR THIS ACTION . . . . . . . . . . . . . . . 10

    III.   THIS ACTION IS NOT BARRED BY THE STATUTE OF LIMITATIONS . . 12

    IV.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Amaker v. Weiner*, 17 F.3d 48 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Alliance of American Insurers v. Cuomo*, 854 F.2d 591 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . .8

*Burnett v. Physician's Online, Inc.*, 99 F.3d 72 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . .5, 9

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). . . . . . . . 5, 8, 10

*DeCisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dittmer v. County of Suffolk*, 146 F.3d 113 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), *reh'g denied*, 462 F.3d 147,
*cert. denied*, 127 S. Ct. 3014 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4, 6, 13

*414 Theater Corp. v. Murphy*, 499 F.2d 1155 (2d Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . .5-6

*Handberry v. Thompson*, 446 F.3d 335 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391 (2d Cir. 1995). . . . . . . . . . . . 7

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Heck v. Humphrey*, 512 U.S. 477 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Joint E. and S. Dist. Asbestos Litig.*, 78 F.3d 764 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . 5

*Kirkbride v. Continental Cas. Co.*, 933 F.2d 729 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 9

*Kline v. Burke Construction Co.*, 260 U.S. 226 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Malley v. Briggs*, 475 U.S. 335 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*McRedmond v. Wilson*, 533 F.2d 757 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) . . . . . . . . . . . . . 6

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986). . . . . . . . . . . . .6

*Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286 (2d Cir. 1976),
    *cert. dism.*, 431 U.S. 911 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Pathways, Inc. v. Dunne*, 329 F.3d 108 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Patsy v. Florida Bd. of Regents*, 457 U.S. 496 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Patterson v. County of Oneida*, 375 F.3d 206 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122 (2d Cir. 1995). . . . . . 5, 7

*People v. Catu*, 4 N.Y.3d 242 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*People v. Selikoff*, 35 N.Y.2d 227 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*People v. Sparber*, 10 N.Y.3d 457 (2008), 2008 WL 1860092 . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). . . . . . . . . . . . . . . . . . . . . . . . .7

*Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Russell v. Coughlin*, 910 F.2d 75 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Santobello v. New York*, 404 US. 257 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Schlagler v. Phillips*, 166 F.3d 439 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Steffel v. Thompson*, 415 U.S. 452 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Styles v. Goord*, 198 Fed. Appx. 36 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Trainor v. Hernandez*, 431 U.S. 434 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588 (2d Cir. 1989) . . . . . . . . . . . . . . 7, 8

*Varrone v. Bilotti*, 123 F.3d 75 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Village of Westfield v. Welch's*, 170 F.3d 116 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Williams v. Lambert*, 46 F.3d 1275 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8

*Woodford v. Community Action Agency of Greene*, 239 F.3d 517 (2d Cir. 2001) . . . . . . . . . .9, 10

*Woods v. Candela*, 47 F.3d 545 (2d Cir. 1995) ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

iii

*Younger v. Harris*, 401 U.S. 37 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Zablocki v. Redhail*, 434 U.S. 374 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6

**<u>Statutes</u>**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 10, 12

U.S. Const. Fourteenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4, 8, 9-10, 13

N.Y. Penal Law § 70.45(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 7, 8, 13

N.Y. Penal Law § 70.45(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

N.Y. Penal Law § 70.45(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

## PRELIMINARY STATEMENT

Plaintiff Choice Scott respectfully submits this memorandum of law in opposition to the motion of defendants Brian Fischer and Richard DeSimone to dismiss the complaint. For the reasons set forth below, defendants' motion should be denied in its entirety.[1]

## STATEMENT OF THE CASE

In 1998 the State of New York enacted a statute imposing a mandatory term of post-release supervision ("PRS") on felony offenders sentenced to determinate prison terms. N.Y. Penal Law § 70.45(1) ("Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision"). The PRS period "commence[s] upon the person's release from imprisonment." N.Y. Penal Law § 70.45(5). Individuals subject to PRS must comply with various terms and conditions imposed by the New York State Division of Parole -- terms and conditions which may include curfews, travel restrictions, substances abuse testing and treatment, and placement in residential treatment facilities. *People v. Catu*, 4 N.Y.3d 242, 244 (2005); N.Y. Penal Law § 70.45(3). Violations can result in re-incarceration for a period up to the balance of the remaining period of post-release supervision, not to exceed five years. N.Y. Penal Law § 70.45(1).

For a time after passage of the new law, judges in New York continued to sentence felony offenders to determinate prison terms without PRS. In many instances, the defendant had pleaded guilty in return for a prosecutor's promise to recommend only a determinate prison term. At sentencing, the judge imposed the promised sentence. There was no mention of PRS. Nonetheless, the New York State Division of Correctional Services ("DOCS") administratively

---

[1] Contrary to opposing counsel's assertion (Defts. Mem. at 1), plaintiff timely served and filed proof of service for all four named defendants.

imposed PRS on the defendant, who often did not learn of the PRS until shortly before release from prison.

Defendant Fischer is presently DOCS Commissioner and defendant DeSimone is presently Associate Counsel in Charge of DOCS's Office of Sentencing Review. Compl. ¶¶ 5, 7. On information and belief, they adopted, approved, and/or ratified the policy and practice of administratively imposing PRS on criminal defendants sentenced to determinate prison terms without PRS. Compl. ¶ 16.

On July 12, 1999, plaintiff pleaded guilty to Attempted Robbery in the Second Degree in the Supreme Court of the State of New York, New York County. Compl. ¶ 12. On August 17, 1999, the Honorable Charles Solomon, a Justice of the Supreme Court of the State of New York, sentenced plaintiff to a determinate three-year term of imprisonment -- the sentence promised plaintiff under a plea bargain agreement. Compl. ¶ 13. On about July 1, 2002, a few days before her release from prison, plaintiff learned -- for the very first time -- that she was subject to PRS for a period of five years. Compl. ¶ 14. On October 10, 2006, plaintiff was arrested in New Jersey for violating the terms and conditions of her PRS, and on October 30, 2006, she was extradited to New York. Compl. ¶ 18. From October 30, 2006 until late January 2007, plaintiff was held at Riker's Island Correctional Facility. Compl. ¶ 19. In late January 2007, she was transferred to Bedford Hills Correctional Facility. *Id.*

On July 2, 2007, the Honorable Rory J. Bellantoni, a Justice of the Supreme Court of the State of New York, Westchester County, granted plaintiff's petition for a writ of habeas corpus, declaring her PRS a nullity. (A copy of the decision is attached as Exhibit A.) On August 7, 2007, plaintiff was released from Bedford Hills Correctional Facility. Compl. ¶ 19.

On December 17, 2007, plaintiff commenced this action seeking damages from defendants under 42 U.S.C. § 1983 ("Section 1983") for violation of her federally guaranteed rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Due Process Clause").

## ARGUMENT

More than 70 years ago, the Supreme Court declared that only a judge may impose a sentence on an individual convicted of a crime. *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936). A federal district court judge had sentenced Wampler to concurrent 18-month prison terms and a $5,000 fine for income tax evasion and fraud. *Id.* at 461. Pursuant to local practice, however, the clerk of the court added the condition that Wampler remain incarcerated until his fine was paid. *Id.* at 462. The Supreme Court invalidated that condition. Writing for a unanimous Court, Justice Cardozo declared that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court." *Id.* at 464.

Seventy years later, in June 2006, the Second Circuit reaffirmed that "basic principle of criminal sentencing." *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). Earley had pleaded guilty to Attempted Burglary in the Second Degree. *Id.* at 73. The sentencing judge had imposed the sentence promised to Earley by the prosecutor: a determinate six-year prison term. *Id.* There was no mention of PRS during plea bargain discussions, at sentencing, or in the commitment order. *Id.* Nonetheless, DOCS administratively imposed a five-year period of PRS on Earley. *Id.* The Second Circuit declared that addition to Earley's sentence null and void and in violation of his rights under the Due Process Clause. *Id.* at 75-76. Writing for a unanimous panel, Chief Judge Walker stated: "The only cognizable sentence is the one imposed by the judge. Any alterations to that sentence, unless made by a judge in a subsequent proceeding, is of no effect." *Id.* at 75. Chief Judge Walker further observed: "If, as in *Wampler*, an erroneous

3

order of commitment prepared by the clerk of court with the court's knowledge cannot alter the sentence imposed by the court, then plainly a later addition to the sentence by an employee of the executive branch cannot do it." *Id.*

Two months later, in August 2006, the Second Circuit denied rehearing. *Earley v. Murray*, 462 F.3d 147 (2d Cir. 2006). Writing again for the panel, Chief Judge Walker stated that "we adhere to our view that the inclusion of a five-year period of [PRS] in Earley's sentence when that [term] was not included in the sentence imposed at Earley's sentencing hearing violated his rights under the Due Process Clause of the United States Constitution." *Id.* at 148. Ten months later, in June 2007, the Supreme Court denied review. 127 S. Ct. 3014 (2007).

In short, it was "clearly established" law at the time that plaintiff was re-incarcerated for violating her PRS (October 2006) that the Due Process Clause barred DOCS from administratively imposing PRS on felony offenders sentenced to determinate prison terms without PRS such as plaintiff. *Earley*, 451 F.3d at 76.

Defendants nonetheless urge this Court to dismiss plaintiff's Section 1983 claim on various grounds having nothing to do with the merits of plaintiff's claim. Defendants argue, in particular, that the Court should abstain from deciding this case, that plaintiff's claim is barred by the so-called *Heck* rule, that the statute of limitations has run, and that defendants are entitled to qualified immunity. These arguments are all unpersuasive.[2]

---

[2] Defendants further argue that the Eleventh Amendment bars damage claims against the named defendants in their official capacity. Defts. Mem. at 22-23. Plaintiff, however, sued the named defendants in their individual capacities. Compl. ¶¶ 5-8. Plaintiff also sued the "John Doe" defendants in their individual capacities. Compl. ¶ 9.

4

# I

## THE COURT SHOULD NOT ABSTAIN FROM DECIDING THIS CASE

"As a general matter, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Abstention is an "'extraordinary and narrow'" exception to that duty. *In re Joint E. and S. Dist. Asbestos Litig.*, 78 F.3d 764, 775 (2d Cir. 1996) (quoting *Colorado River*, 424 U.S. at 813). "There is little, if any, discretion to abstain in a case which does not meet the requirements of a particular abstention principle." *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 126 (2d Cir. 1995).   This case does not meet the requirements of the particular abstention doctrines invoked by defendants.

### A.    *Younger* Abstention Does Not Apply Here

Defendants initially invoke the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). Defts. Mem. at 6-9. But *Younger* applies only when a plaintiff seeks to interfere with an "ongoing" state criminal, civil, or administrative proceeding in which he or she is a party. *Schlagler v. Phillips*, 166 F.3d 439, 442 (2d Cir. 1999).   There is no ongoing state proceeding involving plaintiff, inasmuch as her criminal case concluded nine years ago (in 1999).   Because there are no pending criminal proceedings against plaintiff, there are no *Younger* concerns here. *Cf. Zablocki v. Redhail*, 434 U.S. 374, 379-80 n.5 (1978) ("the District Court was correct in finding [*Younger*] inapplicable, since there was no pending state-court proceeding in which appellee could have challenged the statute"); *Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) ("the state proceedings that gave rise to the District Court's *Younger* concerns are no longer pending"); *414 Theater Corp. v. Murphy*, 499 F.2d 1155, 1161 (2d Cir. 1974) (*Younger*

no bar to preliminary injunctive relief because "there is no pending state prosecution against appellee").

The federal cases on which defendants rely (Defts. Mem. at 6, 8) thus are factually inapposite. Each involved a <u>pending</u> state proceeding. *See, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 598 (1975) (pending state court public nuisance action); *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 624 (1986) (pending state fair employment proceeding); *Trainor v. Hernandez*, 431 U.S. 434, 435-37 (1977) (pending state court civil attachment proceedings); *Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 425, 428-29 (1982) (pending state bar disciplinary proceedings).

That plaintiff has an "opportunity" to proceed in state court on her federal constitutional claim (Defts. Mem. at 7) is wholly irrelevant. "[I]ndividuals seeking relief under [Section 1983] need not present their federal constitutional claims in state court before coming to a federal forum." *Zablocki v. Redhail*, 434 U.S. at 379-80 n.5. *Accord Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 516 (1982) (O'Connor, J., concurring) ("exhaustion of [state] administrative remedies is not required in [Section 1983] actions"); *Steffel v. Thompson*, 415 U.S. 452, 472-43 (1974) ("When federal claims are premised on [Section 1983] and 28 U.S.C. § 1343(3) as they are here we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights").

Finally, even if the *Younger* abstention doctrine applied here, and it does not, this case would fall under the "bad faith" exception to the doctrine. *Younger*, 401 U.S. at 49. Given "clearly established" federal law declaring administratively imposed PRS to be unconstitutional, *Earley*, 451 F.3d at 76, there can be "no valid, good faith basis" for defendants' re-incarceration of plaintiff in October 2006 four months after the Second Circuit decided *Earley* and two month

6

after the circuit court denied rehearing -- for violating her administratively imposed PRS. *Schlagler*, 166 F.3d at 443 ("bad faith" exception might be triggered if district attorney had prosecuted plaintiff under statute that had been conclusively declared unconstitutional). Simply put, defendants have engaged "in flagrantly unconstitutional acts." *Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995).

**B.    *Pullman* Abstention Does Not Apply Here**

Defendants next invoke the *Pullman* abstention doctrine. *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). Defts. Mem. at 9-11. There are three prerequisites for abstention under *Pullman*: "'First, the state statute must be unclear or the issue of state law uncertain; second, resolution of the federal issue must depend upon the interpretation given to the ambiguous state provision; and third, the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue.'" *Williams v. Lambert*, 46 F.3d 1275, 1281 (2d Cir. 1995) (quoting *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 594 (2d Cir. 1989)). None is met here.

The only relevant state statute, N.Y. Penal Law § 70.45(1), is clear and unambiguous on its face, requiring that each determinate sentence include, "as a part thereof, an additional period of post-release supervision." *Id.* § 70.45(1). *Cf. Handberry v. Thompson*, 446 F.3d 335, 356 (2d Cir. 2006) ("We do not think that the New York State law at issue here is so unclear that it was an abuse of discretion for the district court to decline to abstain"); *Steinhaus*, 60 F.3d at 126 ("The regulations at issue are neither ambiguous nor unintelligible, nor are they rendered 'unclear' merely because no state court has yet construed them"); *Williams*, 46 F.3d at 1282 ("the statute is clear on its face, and there is no indication that it has been interpreted in any unclear way").

7

Resolution of the federal constitutional issue here -- whether defendants violated plaintiff's federal due process rights by administratively imposing PRS on her -- does not depend upon any interpretation given to N.Y. Penal Law § 70.45(1). *Cf. United Fence & Guard Rail Corp.*, 878 F.2d at 596 ("the federal constitutional issues presented do not depend upon resolution of the state law issues"); *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 602 (2d Cir. 1988) ("plaintiff's federal [due process] question in this case does not depend on the state law issue of adequacy of rates").

Finally, there is no interpretation of N.Y. Penal Law § 70.45(1) that would avoid or modify the federal constitutional issue. Irrespective of how that statute is interpreted, the federal constitutional issue here remains whether defendants violated plaintiff's federal due process rights by administratively imposing PRS on her. *Cf. Steinhaus*, 60 F.3d at 126 (2d Cir. 1995) ("defendants have not explained how the federal issue presented in this case -- whether defendants denied fair consideration of Planned Parenthood's proposal as a result of arguably impermissible considerations -- could be mooted by any particular interpretation of the state regulations at issue"); *Alliance of American Insurers*, 854 F.2d at 602 ("Even assuming that a state court's construction of § 40 might modify the federal constitutional challenge to § 40, as the plaintiffs challenged §§ 8 and 40 both alone and taken together, § 8 would remain to be adjudicated"); *McRedmond v. Wilson*, 533 F.2d 757, 762 (2d Cir. 1976) (issue whether plaintiffs -- children adjudicated persons in need of supervision ("PINS") -- were constitutionally entitled to minimum level of treatment not avoided or modified by construction of state PINS laws).

**C.    *Colorado River* Abstention Does Not Apply Here**

Defendants lastly invoke the *Colorado River* abstention doctrine. Defts. Mem. at 11-12. *Colorado River* applies, however, only "in limited situations in which state and federal courts

8

exercise concurrent jurisdiction <u>simultaneously</u>." *Burnett*, 99 F.3d at 76 (emphasis added). *Accord Dittmer v. County of Suffolk*, 146 F.3d 113, 117-18 (2d Cir. 1998) ("contemporaneous exercise of concurrent jurisdictions"); *Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) ("concurrent and simultaneous federal and state proceedings"); *Woodford v. Community Action Agency of Greene*, 239 F.3d 517, 522 (2d Cir. 2001) ("existing concurrent state court litigation"). Because there is no pending state criminal proceeding against plaintiff, *Colorado River* does not apply here. *Cf. Kirkbride v. Continental Cas. Co.*, 933 F.2d 729, 734 (9th Cir. 1991) (finding *Colorado River* inapplicable because no concurrent state court proceeding was pending after state case was removed to federal court).

Even if *Colorado River* applied here, and it does not, the six *Colorado River* factors (*Burnett*, 99 F.3d at 76) all favor exercise of federal court jurisdiction. First, there is no res or property involved here. *Cf. DeCisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989) (absence of res 'point[s] toward exercise of federal jurisdiction"). Second, the federal court is as, if not more, convenient forum than the state forum. *Cf. Village of Westfield*, 170 F.3d at 122 (where federal court is as convenient as state court, that favors exercise of federal jurisdiction). Third, there is no threat of piecemeal litigation, since "resolution of the federal constitutional questions will settle the federal constitutional issue, regardless of the outcome of [any] state litigation." *Alliance of American Insurers*, 854 F.2d at 603. Fourth, there is no pending state criminal proceeding against plaintiff, let alone one that has "progressed" faster than this case. *Woodford*, 239 F.3d at 524. Fifth, "the applicable substantive law is federal," since plaintiff raises only a federal constitutional issue. *Village of Westfield*, 170 F.3d at 124. Finally, in the exceedingly unlikely event that the state criminal proceeding against plaintiff were re-opened, plaintiff could not recover damages in that proceeding for violation of her federal due process rights. "Having

9

properly brought [her] federal claim[ ] in federal court, [plaintiff is] entitled to pursue [that] claim[ ] and, if successful, to be awarded the remedies with which Congress sought to encourage that pursuit." *Woodford*, 239 F.3d at 524.

That state courts may not have "definitively addressed" Penal Law § 70.45(1)'s applicability to plaintiff (Defts. Mem. at 12) is no basis to abstain under *Colorado River*. "[A]bstention may [not] be based simply on an aversion to deciding an issue prior to a state court's adjudication." *Woodford*, 239 F.3d at 525. "Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by application of the principles of *res judicata*." *Kline v. Burke Construction Co.*, 260 U.S. 226, 230 (1922).

## II

### *HECK v. HUMPRHEY* DOES NOT BAR THIS ACTION

Defendants next argue that plaintiff's Section 1983 claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), in which the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus,28 U.S.C. § 2254.

*Id.* at 486-87. Defts. Mem. at 13-17. But Justice Bellantoni declared plaintiff's administratively imposed PRS invalid in July 2007 in granting plaintiff's petition for a writ of habeas corpus. (*See* Ex. A.) Defendants simply ignore that ruling by a state tribunal authorized to make such determination. The *Heck* rule is thus no bar to this action.

10

Contrary to defendants' assertion (Defts. Mem. at 15), plaintiff does not remain potentially subject to PRS. To impose PRS on plaintiff -- six years after she completed the three-year prison term promised her in return for her guilty plea -- would surely violate her federal and state due process rights. *Cf. Santobello v. New York*, 404 US. 257, 260 (1971) (defendant entitled either to specific enforcement of plea bargain promise or to withdraw guilty plea); *People v. Selikoff*, 35 N.Y.2d 227, 241 (1974) (same). Having fully served her prison term, plaintiff cannot be restored to the position that she was in prior to her guilty plea. Accordingly, she is entitled to specific performance of the plea bargain promise. *Cf. Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286 (2d Cir. 1976), *cert. dism.*, 431 U.S. 911 (1977) (petitioner entitled to specific enforcement of plea bargain promise).

Even if the sentencing court could impose PRS on plaintiff at this late date, and that court cannot, plaintiff would still be entitled to damages for the period during which she was subject to administratively imposed PRS. Given the Second Circuit's ruling in *Earley* that the federal due process clause barred DOCS from administratively imposing PRS, 451 F.3d at 74, 76, defendants' assertion that re-incarceration of plaintiff for violating her administratively imposed PRS does not give rise to a federal constitutional claim (Defts. Mem. at 17) is patently ludicrous. In remanding the six cases in *People v. Sparber*, 10 N.Y.3d 457 (2008), 2008 WL 1860092, for re-sentencing of the defendants to PRS, the New York Court of Appeals expressly declined to consider *Earley*'s applicability. *Id.* at ___ n.5 ("Because defendants are entitled to relief under the CPL, we need not reach their constitutional claims which primarily rely upon the Second Circuit's decision in *Earley*").

11

### III

### THIS ACTION IS NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendants next argue -- in contradiction to their preceding argument that plaintiff's claim has never accrued (Defts. Mem. at 13-17) -- that the statute of limitations has run on plaintiff's claim. Defts. Mem. at 18. Even disregarding defendants' contradictory positions, it is amply clear that plaintiff timely commenced this action.

A Section 1983 claim "for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489-90. *Accord Amaker v. Weiner*, 17 F.3d 48, 52 (2d Cir. 1999) ("in cases such as this, where the validity of the plaintiff's claim depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct"); *Woods v. Candela*, 47 F.3d 545, 546 (2d Cir. 1995) (plaintiff's Section 1983 false arrest claim did not accrue prior to reversal of his conviction and therefore was not time-barred).

Plaintiff commenced this action on December 17, 2007, less than six months after Justice Bellantoni granted her petition for a writ of habeas corpus and declared invalid her administratively imposed PRS, well within the three-year statute of limitations applicable to Section 1983 claims in New York. *Amaker*, 179 F.3d at 50. Once again, defendants simply ignore the ruling by a state tribunal authorized to make such determination.

The cases on which defendants rely are factually inapposite. Defts. Mem. at 18. The plaintiff in *Styles v. Goord*, 198 Fed. Appx. 36 (2d Cir. 2006), a prisoner, alleged that prison officials caused him to contract Hepatitis C. *Id.* at *1. The plaintiff in *Patterson v. County of Oneida*, 375 F.3d 206 (2d Cir. 2004), a former corrections officer, alleged discrimination in employment, *Id.* at 212. Neither plaintiff challenged a conviction or sentence. The delayed-accrual rule announced in *Heck* thus did not apply.

12

IV

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Finally, defendants argue that they are entitled to qualified immunity from damages. Defts. Mem. at 18-21. Qualified immunity protects a governmental official from damages "'if it was objectively reasonable for [the official] to believe that his acts did not violate [clearly established] rights.'" *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir. 1990) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)). The burden is on the official to "show[ ] that the challenged act was objectively reasonable in light of the law existing at that time." *Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is denied any governmental official "knowingly violat[ing] the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Applying those standards here, defendants are not entitled to qualified immunity.

At the time of plaintiff's re-incarceration for violating her administratively imposed PRS (October 2006), it was "clearly established" that the Due Process Clause barred DOCS from administratively imposing PRS on criminal defendants who had not been sentenced by judges to PRS. *Earley*, 451 F.3d at 76. Defendants were aware of the *Earley* decision. Nonetheless, they chose to disregard that clearly established law in continuing to administratively impose PRS on plaintiff and others. In short, they "knowingly violated" *Malley*, 475 U.S. at 341.

That Penal Law § 70.45(1) mandated PRS for violent felony offenders sentenced to determinate prison terms (Defts. Mem. at 19) does not excuse defendants' non-compliance with the clearly established federal law. Nor does the unsettled nature of state law in regard to administrative imposition of PRS prior to April 29, 2008 (Deft. Mem. at 19) excuse defendants' non-compliance. Defendants' actions thus were not "objectively reasonable." *Varrone*, 123 F.3d at 78.

13

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss should be denied in its entirety.

Dated: New York, New York
      June 23, 2008

ROBERT T. PERRY (RP1199)
350 Broadway, Suite 1207
New York, New York 10013
(212) 219-9410

*Attorney for Plaintiff*

14

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------X
The People of the State of New York ex rel.
**CHOICE SCOTT**, DIN # 99-G-1060,
Warrant # 373983, NYSID # 8627907-J

                       Petitioner/Relator,

      vs.

Superintendent of Bedford Hills Correctional Facility,
New York State Division of Parole,
New York State Department of Correctional Services,

                    Respondents.
-----------------------------------------------------------------------X

**FILED
AND
ENTERED
ON 7-16 2007**

Index No.: 2360-07

**ORDER**

        Petitioner has moved this Court for a writ of Habeas Corpus pursuant to C.P.L.R. §7001 et seq.

        The following papers were read:

| | |
|---|---|
| Writ of Habeas Corpus, Verified Petition for Writ of Habeas Corpus and Exhibit A-B | 1-4 |
| Affirmation in Opposition and Return to Petition for a Writ of Habeas Corpus of Assistant Attorney General, Elyse J. Angelico, Esq. and Exhibits A-I | 5-14 |
| Affirmation in Reply to Opposition to Writ of Habeas Corpus | 15 |
| Letter dated May 21, 2007 of Assistant Attorney General, Elyse J. Angelico, Esq | 16 |
| Letter dated June 11, 2007 of Elon Harpaz, Esq. Counsel for Petitioner | 17 |

        On July 12, 1999, Relator pleaded guilty to Attempted Robbery in the Second Degree in

New York County Supreme Court under Indictment Number 10728-98 with the understanding

1

that she would receive a determinate sentence of three (3) years. The plea minutes are silent regarding any post-release supervision period to be imposed. Respondents' Exhibit I. On August 17, 1999, Relator was sentenced to a determinate sentence of three (3) years as a second felony offender, as previously promised on July 12, 1999. The sentencing minutes are also silent regarding any period of post-release supervision. Relator's Exhibit A. In addition, the commitment order is silent regarding any post-release supervision period. Respondents' Exhibit B. While serving her determinate sentence for attempted robbery, Relator attempted to commit arson while in prison. Respondents' Exhibit E. On February 8, 2001, Relator was sentenced to a concurrent indeterminate term of two and a half (2 ½) to five (5) years for Attempted Arson in the Third Degree[1]. On July 5, 2002, Relator was released from prison and was "placed under the legal jurisdiction of the Division of Parole until the 5th day of July 2007." Relator's Exhibit B. Relator did sign the Certificate of Release to Parole Supervision. Id. Thus, Relator was imposed a post-release supervision period of five (5) years by an administrative agency (Department of Corrections and/or Division of Parole) and not by the court. On March 4, 2004, Relator was declared delinquent and a parole revocation warrant was issued on March 12, 2004. On or about October 30, 2006, Relator was returned on the parole revocation warrant. On January 16, 2007, a parole revocation hearing was held and Relator was found to have violated the terms of her release and was imposed an eighteen (18) month time assessment.

On February 26, 2007, Relator filed the instant application[2]. In her application, Relator

---

[1] Respondents' Exhibit B indicates that the attempted arson sentence was to run concurrent nunc pro tunc to August 17, 1999.

[2] A prior application seeking the same relief was filed in Bronx County, but was withdrawn without prejudice following Relator's transfer to Westchester County.

2

requests that the declaration of delinquency and the parole warrant be vacated, as well as, the imposition of the eighteen (18) month time assessment. Relator argues that since her five (5) year post-release supervision was imposed administratively and not by the sentencing court, the post-release supervision "must be deemed a nullity, and the violation warrant, the declaration of delinquency, and the time assessment imposed for violating the terms of post-release supervision" must all be vacated. Relator's Verified Petition, p.5.

Respondents' oppose Relator's application. In their opposition papers, Respondents argue that the five (5) year period of post-release supervision is automatically imposed by operation of statute regardless of whether the sentencing court informed Relator that there would be an imposition of a post-release supervision period. Respondents further argue that Relator failed to raise this issue on direct appeal and/or in a CPL § 440 application and thus, the relief sought should be denied. Respondents allege that habeas corpus relief is inappropriate because Relator is not entitled to immediate release from custody, but rather, that Relator's only remedy is to withdraw her plea.

Much litigation has arisen in the past several months regarding similar issues and the different Appellate Divisions seem to be in conflict regarding the appropriate relief/remedy. This Court must, however, follow the dictates of the Appellate Division, Second Department. A plethora of cases from the Appellate Division, Second Department have held that where the sentencing minutes (as well as the court's commitment order) are silent regarding the imposition of a post-release supervision period, the Department of Corrections, or any other administrative agency, is without authority to impose post-release supervision and thus, post-release supervision does not become part of the sentence. People v. Martinez, 2007 WL 1502033 (N.Y.A.D.2

Dep't.); People v. Royster, 2007 N.Y. Slip Op. 04325 (2d Dep't 2007); People v. Guerrero, 39

A.D.3d 878, 834 N.Y.S.2d 471 (2nd Dep't 2007); People v. Thompson, 831 N.Y.S.2d 720, 2007

N.Y. Slip Op. 02965 (2nd Dep't 2007).

   The Court of Appeals has held that a defendant must be advised of the direct

consequences of the plea and the court has no obligation to advise of the possibility that

collateral consequences of a criminal conviction or guilty plea might exist. People v. Ford, 86

N.Y.2d 397, 657 N.E.2d 265, 633 N.Y.S.2d 270 (1995); People v. Agero, 234 A.D.2d 94, 651

N.Y.S.2d 430 (1st Dep't 1996). Where the plea minutes are silent regarding the imposition of a

post-release supervision period, the Court of Appeals has opined that the imposition of a post-

release supervision period is a direct consequence of a guilty plea, and thus, any failure to advise

a defendant of any direct consequence of a criminal conviction requires reversal of the

conviction. People v. Van Deusen, 7 N.Y.3d 744, 853 N.E.2d 223, 819 N.Y.S.2d 854 (2006);

People v. Catu, 4 N.Y.3d 242, 825 N.E.2d 1081, 792 N.Y.S.2d 887 (2005). During the pendency

of this application, the Court of Appeals rendered yet another opinion reiterating its position:

> "[we] similarly conclude that where a trial judge does not fulfill the
> obligation to advise a defendant of postrelease supervision during
> the plea allocution, the defendant may challenge the plea as not
> knowing, voluntary and intelligent on direct appeal,
> notwithstanding the absence of a postallocution motion. In so
> deciding, we can not shut our eyes to the actual or practical
> unavailability of either a motion to withdraw the plea under CPL
> 220.60(3), or a motion to vacate the judgment of conviction under
> CPL 440.10 in these cases. If the trial judge does not mention
> postrelease supervision at the allocution, as happened here, a
> defendant can hardly be expected to move to withdraw his plea on
> a ground of which he has no knowledge. . . . Finally, the omission
> at issue is clear from the face of the record and therefore not
> properly raised in a CPL 440 motion." People v. Louree, 2007 WL

4

1594425 (N.Y. 2007).

Respondents argue that the instant application should be dismissed as there is no legal precedent allowing for a Writ of Habeas Corpus to be filed in this type of action. Respondents correctly point out that the Second Department has only considered Post Release Supervision in the context of defendant's direct appeal of conviction or post-conviction motion under C.P.L. § 440, not under a writ of habeas corpus. Respondents' Affirmation in Opposition, p. 7. However, the Court of Appeals recently decided in People v. Louree (supra) that the relief sought by Relator could not be properly raised in a CPL § 440 motion. In People v. Smith, 829 N.Y.S.2d 226, 2007 N.Y. Slip Op. 01157 (2nd Dep't 2007), the Second Department dismissed defendant's appeal stating that since defendant "[did] not raise any challenge to the sentence actually imposed, his appeal must be dismissed." Relator does not challenge the sentence actually imposed by the court, but the post-release supervision period imposed by an administrative agency, such as the Department of Corrections or the Division of Parole.

Relator's writ raises the issue of what is the appropriate motion to file in order to challenge the legality of the imposition of a post-release supervision period. Lower courts have addressed this issue in the context of a writ of habeas corpus proceeding. In People ex rel. Lewis v. Warden, Otis Baum Correctional Ctr., N.Y. State Div. Of Parole, N.Y. State Dept. Of Correctional Services, 14 Misc.3d 468, 825 N.Y.S.2d 341 (Bronx County 2006) and People ex rel. White v. Warden, Rikers Island Correctional Facility and N.Y. State Div. Of Parole, 15 Misc.3d 360, 833 N.Y.S.2d 363 (Bronx County 2007) these lower courts found that a writ of habeas corpus was a proper remedy to challenge the imposition of a post-release supervision period by an administrative agency and granted the relief sought therein.

5

Respondents urge the Court to follow the dictates of <u>Van Deussen</u> (*supra*) and <u>Catu</u>

(*supra*) arguing that the proper remedy is a motion to vacate the guilty plea, not a writ of habeas

corpus.

The instant case is distinguishable from <u>Van Deussen</u> (defendant moved to withdraw her

guity plea prior to sentence), <u>Catu</u> (defendant admitted that he learned about the imposition of a

post-release supervision period within thirty days of his sentence; defendant also filed an appeal),

and <u>Louree</u> (defendant was informed of the post-release supervision period during sentencing,

but not during his initial plea allocution), in that Relator has already served the entire determinate

sentence imposed by the court. From the record and documents submitted, it appears that the

first time Relator was aware of an imposition of a post-release supervision period was upon her

release, when Relator signed the Certificate of Release to Parole Supervision on July 1, 2002.

Respondents' Exhibit C. Relator does not seek to have her judgment of conviction vacated nor is

she requesting that the sentence promised and imposed be set aside. Rather, Relator challenges

the legality of the Department of Corrections' and/or Division of Parole's actions which have

resulted in restraining Relator's liberty based on alleged violations of conditions of her release

during her post-release supervision period. Pursuant to CPLR § 7002, Relator seeks a

determination from this Court as to the legality of her detention.

Based on the above discussion, this Court finds that the Relator's application for a Writ

of Habeas Corpus is properly before this Court. Upon review of the moving papers,

documentation provided and relevant case law, this Court finds that the post-release supervision

period imposed upon Relator is a nullity; the entire record is silent as to the imposition of a post-

release supervision period to be imposed upon Relator and the Department of Corrections and/or

6

Division of Parole does not have the legal authority to impose it.

Therefore, it is

**ORDERED**, that Relator's application for a Writ of habeas Corpus is sustained and granted in its entirety, and it is further

**ORDERED**, that Respondents are directed, forthwith, to vacate the post-release supervision period imposed upon Relator's sentence, and it is further

**ORDERED**, that the declaration of delinquency, Parole Violation Warrant # 373983 and the 18 month assessment are hereby vacated, and it is further

**ORDERED**, that Relator be released from custody forthwith.

The foregoing shall constitute the decision and order of the Court.

Date: July 2, 2007
White Plains, New York

_____
Honorable Rory J. Bellantoni, A.J.S.C

7

Elon D. Harpaz, Esq.
The Legal Aid society
199 Water Street
New York, New York 10038

Elyse Angelico, Esq.
Assistant Attorney General
101 East Post Road
White Plains, New York 10601